IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| SE PROPERTY HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FOLEY AND BARNES, LLC, an | ) CIVIL NO. 11-00163-CG-M |
| Alabama Limited Liability Company; | ) |
| JOHN B. FOLEY, IV, individually; | ) |
| and R. JEFFREY BARNES, | ) |
| individually, | ) |
| | ) |
| Defendant. | ) |

## ORDER

This matter is before the court on the plaintiff's motion for summary judgment. (Doc. 28). On April 4, 2011, Vision Bank filed this action asserting separate breach of contract claims against Foley and Barnes, LLC ("the LLC"); John B. Foley, IV, individually ("Foley"); and R. Jeffrey Barnes, individually ("Barnes") (collectively, the "defendants"). (Doc. 1). After a subsequent merger between Vision Bank and SE Property Holdings, LLC ("SEPH"), on March 8, 2012, Vision Bank filed a motion to substitute party and designate SEPH as the plaintiff in this action. (Doc. 25). The court granted Vision Bank's motion on the same day.[1] (Doc. 26). After consideration of the parties' briefs in support and opposition (Docs. 29 and 36,

---

[1] Since both Vision Bank and SEPH are or have been plaintiffs in this case at different times, the court will refer to Vision Bank where Vision Bank was the party filing a given document. Likewise, the court will refer to SEPH where SEPH was the party filing a document, or is otherwise the pertinent party.

1

respectively), and for the reasons enumerated below, the court finds that SEPH's motion for summary judgment is due to be **GRANTED**.

## I. FACTUAL BACKGROUND

### (a)   LOCAL RULE 7.2(b)

As an initial matter, Local Rule 7.2(b) states with regard to a party opposing summary judgment that "if it is contended that there are material factual disputes, [the opposing party] shall point out the disputed facts appropriately referenced to the supporting document or documents filed in the action." The defendants have not done so, and therefore the court presumes that there exists no dispute as to any material fact at issue in the case. Accordingly, the court adopts Vision Bank's "Suggested Determinations of Undisputed Facts" (Doc. 29, pp. 1-4). See Patton v. City of Hapeville, Ga., 162 Fed. Appx. 895, 896 (11th Cir. 2006).

Thus, the facts of the case are as follows: Foley and Barnes are the sole members of the LLC. (Doc. 29, p. 2). On or about December 30, 2009, Foley and Barnes executed a renewal Multipurpose Note and Security Agreement (the "Note") in favor of Vision Bank in the principal amount of $196,563.51. (Doc. 1-1). The Note is a form contract, with the applicable provisions checked. By its terms, the Note is due on demand or, if no demand, then it "is payable in 11 equal installment payments, amortized over 120 payments, in the amount of $2,190.74 each, commencing on January 30, 2010 and continuing monthly thereafter, and one (1) final payment consisting of the full amount of principal and all accrued interest remaining due and payable on December 30, 2010." Id. at 1. The Note gives Vision

Bank the right to accelerate the maturity of the Note if the borrower defaults. Among the listed events of default is "fail[ure] to make a required payment when due." Id. The Note also contains provisions regarding post-maturity interest, which states:

> **Post-Maturity Interest** Interest will accrue after maturity on the unpaid balance of this note on the same basis as interest accrues prior to maturity unless a specific post maturity rate is agreed to in the next sentence.

Id. The next sentence is checked and states that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration." Id. Finally, in the event of default, the Note permits Vision Bank to recover reasonable costs and attorney's fees incurred in attempting to collect the debt. Id.

On January 12, 2010, Foley and Barnes each executed a separate Unlimited Continuing Guaranty Agreement ("guaranty agreement") as additional security for the Note. (Docs. 1-3 and 1-4). In these guaranty agreements, Foley and Barnes each "unconditionally guaranteed the prompt and full payment and performance of [the LLC's] present and future, joint and/or several, direct or indirect, absolute and contingent, express and implied indebtedness, liabilities, obligations, and covenants ..." (Doc. 1-3, p. 1, ¶2 and 1-4, p 1, ¶2). The principal amount loaned under the Note was expressly identified on the first page of each guaranty agreement, along with the interest rate and maturity date of the Note. Id.

In December 2010, the LLC defaulted under the terms of the loan agreement by failing to pay it in full at its maturity. (Doc. 31-1, p. 3). Accordingly, Vision

Bank demanded payment of all indebtedness from all defendants on February 28, 2011. (Doc. 1-5). As of February 27, 2012, the amount due and owing from the defendants under the Note was $238,030.23, consisting of $196,563.51 in unpaid principal and $41,466.72 in unpaid interest. (Doc. 31-1, p. 3). In connection with its efforts to collect on the loan agreement, Vision Bank incurred attorney's fees in the amount of $13,019.00, costs and expenses in the amount of $390.81, and expert fees in the amount of $275.00. (Doc. 29, p. 4).

On April 4, 2011, Vision Bank filed this action asserting separate breach of contract claims against the LLC and Foley and Barnes each individually. (Doc. 1). Thereafter, on March 8, 2012, after a merger between Vision Bank and SEPH, Vision Bank filed a motion to substitute party and designate SEPH as the plaintiff in this action. (Doc. 25). The court granted Vision Bank's motion on the same day. (Doc. 26).

## II.   SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." The trial court's function is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The mere existence of some evidence to support the non-moving party is not sufficient for denial of summary judgment; there must be 'sufficient evidence favoring the nonmoving party for a jury to return

a verdict for that party.'" Bailey v. Allgas, Inc., 284 F.3d 1237, 1243 (11th Cir. 2002) (quoting Anderson, 477 U.S. at 249). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249-250. (internal citations omitted).

The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." See Anderson, 477 U.S. at 251-252. The moving party bears the burden of proving that no genuine issue of material fact exists. O'Ferrell v. United States, 253 F.3d 1257, 1265 (11th Cir. 2001). In evaluating the argument of the moving party, the court must view all evidence in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in its favor. Burton v. City of Belle Glade, 178 F.3d 1175, 1187 (11th Cir. 1999). "If reasonable minds might differ on the inferences arising from undisputed facts, then [a court] should deny summary judgment." Hinesville Bank v. Pony Exp. Courier Corp., 868 F.2d 1532, 1535 (11th Cir. 1989) (citing Mercantile Bank & Trust v. Fidelity & Deposit Co., 750 F.2d 838, 841 (11th Cir. 1985)).

Once the movant satisfies his initial burden under Rule 56(a), the non-moving party "must make a sufficient showing to establish the existence of each essential element to that party's case, and on which that party will bear the burden of proof at trial." Howard v. BP Oil Co., 32 F.3d 520, 524 (11th Cir. 1994)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Otherwise stated, the non-

5

movant must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The non-moving party "may not rely merely on allegations or denials in its own pleading; rather, its response .... must be by affidavits or as otherwise provided in this rule be set out specific facts showing a genuine issue for trial." Vega v. Invsco Group, Ltd., 432 Fed. App'x 867, 870 (11th Cir. 2011).  "A mere 'scintilla' of evidence supporting the [non-moving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party."  Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990) (citation omitted).  "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken as a whole." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation and citation omitted).

### III.    LEGAL ANALYSIS

#### (a)    ELEMENTS OF VISION BANK'S CLAIMS

In support of its motion for summary judgment, SEPH has presented signed copies of the Note and Guaranty Agreements.  (Docs. 1-1, 1-2, 1-3, and 1-4).  SEPH has also presented an affidavit from Karen Harmon, Vision Bank's Senior Vice–President for Operations and now SEPH's Assistant Secretary, attesting that the

Note is in default, that demand has been made and also setting forth the outstanding balance.  See Doc. 31-1.

### (b)     ALLEGED FAILURE TO MITIGATE DAMAGES

The defendants oppose summary judgment on the ground that Vision Bank failed to mitigate its damages by failing to renew the loan and failing to pursue judgment immediately upon the defendants' default.  (Doc. 36, p. 3).  Unfortunately, the defendants have not pointed to any provision contained in the Note, the loan modification, or the guaranty agreements which require renewal of the loan or immediate pursuit of judgment upon default.  See Doc. 1–1, p. 2, "Additional Terms of the Security Agreement" (setting out Bank's rights under security agreement in event of default) and "Additional Terms of the Note." See also Docs. 1-2 and Doc. 1-3.  In fact, just the opposite is true with respect to renewal of the Note, the terms of which expressly state that the decision whether to renew the loan rested in Vision Bank's sole discretion.  (Doc. 1-1, p. 2, "Additional Terms of the Note," ¶2).

The defendants come up similarly short where legal support for their argument is concerned, citing two inapposite cases, the facts of which bear no resemblance to the facts of the case at bar.  The first case, Britton v. Doehring, 242 So.2d 666 (Ala. 1970), arose out of an automobile collision and hinged on whether the plaintiff's failure to wear a seatbelt was admissible evidence of her failure to mitigate damages.  Id. at 672.  This case tells the court nothing about a bank's purported duty to renew a loan already in default, nor does it establish a required

timeframe, distinct from the statute of limitations, within which a bank must pursue judgment on a defaulted loan.

The second case, Avco Financial Services, Inc. v. Ramsey, 631 So.2d 940, 942 (Ala. 1994), concerns a plaintiff bank's alleged failure to foreclose on a mortgage where there was an encumbrance on the title of the subject property. The defendant argued, and the trial court agreed, that the plaintiff failed to mitigate its damages because it did not take the appropriate legal steps to remove the stay order of a bankruptcy court, then foreclose on the subject property, and then proceed against the grantor for breach of warranty of title. Id. at 943. However, the Alabama Supreme Court reversed and held that the trial judge erroneously applied the mitigation doctrine to the facts of the case and had imposed a requirement that was "incomplete and … far more risky, time-consuming, and expensive" than necessary. Id. Furthermore, the Avco court held that the mitigation doctrine can only be applied upon an evidentiary showing that "the claimant rejected a reasonable course of action that an ordinarily prudent person would have taken under similar circumstances to minimize injury, damage, or loss …" Id. at 942. The defendants have made no evidentiary showing at all in this case. Therefore, in addition to bearing no factual resemblance to the case at bar, Avco does not really hold any precedential value in support of the defendants' argument.

The defendants do not cite any other legal authority to support their assertion that Vision Bank "failed" to renew the loan or to pursue judgment immediately upon default. It would no doubt be a boon to defaulting parties

everywhere if a bank holding a defaulted loan was obligated to renew the loan rather than declaring the borrower to be in default. This court's independent research turned up no such obligation. Similarly, the court found no precedent for the notion that Vision Bank was dilatory in pursuing judgment against the defendants (for defendants did not cite any such precedent). If the defendants wish to pursue such a legal theory, it is incumbent upon them to perform the necessary research and develop that argument, rather than citing to two inapposite cases and expecting this court to fill in the gaps. See Vision Bank v. Merritt, 2010 WL 5474161, *4 (S.D. Ala. 2010) (citing Federal Ins. Co. v. County of Westchester, 921 F.Supp. 1136, 1139 (S.D.N.Y. 1996) ("Under the adversary system, it is counsel's responsibility to explain why these points have legal merit; the Court does not serve as counsel's law clerk.").

### (b)     THE AMOUNT OF POST-JUDGMENT INTEREST

Post-judgment interest in a civil case is determined by 28 U.S.C. § 1961(a) which provides that the rate of interest "shall be calculated from the date of the entry of the judgment [ ] at a rate equal to the weekly average 1–year constant maturity Treasury [bill] ... for the calendar week preceding the date of the judgment." Id.; see also G.M. Brod & Co., Inc. v. U.S. Home Corp., 759 F.2d 1526, 1542 (11th Cir. 1985) (holding that § 1961 applies in diversity cases). Vision Bank contends that a different rate applies in this instance—the 18% default interest rate specified in the Note. The issue is actually twofold: (1) Can the parties override the

statutory rate by agreement? (2) If so, does the contract in this case demonstrate such an agreement?

Although the Eleventh Circuit has never addressed the issue, the consensus among courts that have is that parties may agree to a different post-judgment interest rate.  See, e.g., FCS Advisors, Inc. v. Fair Finance Co., Inc., 605 F.3d 144, 148–49 (2nd Cir. 2010); In re Riebesell, 586 F.3d 782, 794 (10th Cir. 2009); Cent. States, Se. & Sw. Areas Pension Fund v. Bomar Nat'l, Inc., 253 F.3d 1011, 1020 (7th Cir. 2001); In re Lift & Equip. Serv., Inc ., 816 F.2d 1013, 1018 (5th Cir. 1987); Carolina Pizza Huts, Inc. v. Woodward, 67 F.3d 294 (4th Cir. 1995) (unpublished table decision).  However, "federal law requires 'language expressing an intent that a particular interest rate apply to judgments or judgment debts' to be 'clear, unambiguous and unequivocal.' "  Jack Henry & Associates, Inc. v. BSC, Inc., 753 F.Supp.2d 665, 670 (quoting FCS Advisors, 605 F.3d at 148).  This requirement arises from the principal that the debt is extinguished upon entry of judgment and a new debt, a judgment debt, is created.  Id. "The parties must explicitly state that they are agreeing to a postjudgment interest rate."  Id.

The Note in this case does not contain the type of "clear, unambiguous and unequivocal language" necessary to circumvent the statutory interest rate.  Here, the parties merely agreed that "interest will accrue at the rate of 18.00% per year on the balance of this note not paid at maturity, including maturity by acceleration." (Doc. 1-1, p. 1).  Arguments in similar cases that "post-maturity" includes all times after the entry of judgment have been uniformly rejected.  See,

e.g., In re Riebesell, 586 F.3d at 794 (contract's default interest rate provision not sufficient to override statutory rate); Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2nd Cir. 2004) (contractual agreement adding 15% interest rate to arbitration award from "date payment was due" did not override statutory rate); Jack Henry, 753 F.Supp.2d at 670–72 (interest rate applicable to past due amounts insufficient). Because the Note, the loan modification, and the guaranty agreements do not contain an express provision for a post-judgment interest rate, SEPH is entitled to post-judgment interest only to the extent provided by § 1961(a).

### (c) ATTORNEYS' FEES AND COSTS

SEPH also argues that it should recover from the defendants all of its reasonable expenses incurred to collect this debt. As a reasonable expense, SEPH seeks attorneys' fees in the amount of $13,019.00, expenses of $390.81, and expert fees of $275.00. In support thereof, SEPH provides the affidavits of it counsel, Ashley Swink and its expert, Charles J. Fleming. (Doc. 31-7 and Doc. 31-8, respectively).

In the paragraph entitled "Attorneys Fees and Other Collection Costs", the Note provides as follows:

> If I am in default and you have to sue or take other steps to collect or secure this note, I agree to pay you reasonable costs. If the original amount financed is greater than $300 and if you refer this note to an attorney who is not your salaried employee, I agree that these costs include a reasonable attorney's fee.

(Doc. 1-1, p. 2, "Additional Terms of the Note," ¶12). Based on the unambiguous terms of the Note, along with the affidavits of Swink and Fleming, the court finds

that SEPH is entitled to recover costs and reasonable attorneys fees. See Peppertree Apartments, Ltd. v. Peppertree Apartments, 631 So.2d 873, 878 (Ala. 1993) ("The intention of the parties controls when a court construes the terms of a promissory note, and that intention is to be derived from the provisions of the contract, if the language is plain and unambiguous."); see also Doc. 24-2 and Doc. 24-3.

In regard to the reasonableness of the fees and expenses submitted, the Court must consider and address the relevant factors under Alabama law.[2] Lolley v. Citizens Bank, 494 So.2d 19 (Ala. 1986) (vacating judgment pertaining to attorneys' fees for collection of a promissory note where the record did not disclose what factors the court considered in reaching its decision).

The complete list of criteria used in the estimation of the value of an attorney's services under Alabama law includes the following: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12)

---

[2] The complaint was brought on a basis of diversity jurisdiction, thus, the laws of the State of Alabama apply. Additionally, the Note provides that Alabama law will apply. (Doc. 1-6, p. 2, ¶13 and Doc. 1-9, p. 2, ¶13).

the time limitations imposed by the client or by the circumstances.  Wachovia Bank, National Ass'n v. Johnson, 2009 WL 1383315, *5 (S.D. Ala. 2009) (quoting Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala. 1988).  Of course, not all of the criteria will be applicable.

Here, the defendants did not address the issue of fees or expenses in their opposition brief, nor provide the court with any evidence to dispute Ms. Swink's or Mr. Fleming's affidavits.  Thus, upon consideration of the affidavit and the relevant factors set forth above, the Court finds that the attorneys' fees and expenses are reasonable under the circumstances.  Swank and Fleming outline their knowledge of the length of the attorney-client relationship between Vision Bank and Phelps Dunbar for the collection of this debt; the fees and expenses charged to Vision Bank and the customary fee charged to similar business clients by firms in the Mobile area for similar litigation; and the services performed for Vision Bank (and, later, SEPH) consisting of the preparation and filing of the lawsuit and the motion for summary judgment.  See Docs. 24-2 and 24-3.

"The court, either trial or appellate, is itself an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses." Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1303 (11th Cir. 1988) (citations omitted).  This court finds no reason to dispute or question Swink's or Fleming's opinion, a conclusion that is bolstered in part by the fact that the defendants did not see fit to do so themselves. Accordingly, summary judgment

is **GRANTED** in favor of SEPH as to its claim for a reasonable attorneys' fee and expenses. By separate document, judgment shall be entered against the defendants in the amount of $13,019.00 for attorneys' fees, expenses in the amount of $390.81, and expert fees in the amount of $275.00.

## IV.  CONCLUSION

Upon consideration of the evidence, and for the reasons enumerated above, the Court finds that there is no genuine dispute as to any material fact regarding SEPH's claim and it is entitled to judgment as a matter of law. Accordingly, SEPH's motion for summary judgment as to all counts are **GRANTED**.

**DONE** and **ORDERED** this 20th day of April 2012.

/s/ Callie V. S. Granade
UNITED STATES DISTRICT JUDGE